UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONGSHUN ZHANG (A#221-468-470),<br>Petitioner,<br>v.<br>WARDEN, et al.,<br>Respondents. | No. 1:26-cv-02276-DJC-SCR<br><br><u>ORDER and</u><br><u>FINDINGS and RECOMMENDATIONS</u> |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. <u>Factual and Procedural History</u>

Petitioner, a citizen of China, lawfully entered the United States in 2019 with a student visa. ECF No. 1 at 6. On April 3, 2024, Petitioner was arrested and charged with violating various criminal statutes, including a pattern of unlawful activity, Utah Code § 76-10-1603; exploiting prostitution, § 76-10-1305; forgery, § 76-6-501; and communications fraud, § 76-10-1801. ECF No. 9 at 10, 17-18. He was released on a $75,000 bond and electronic monitoring. ECF No. 1 at 6. Petitioner complied with the terms of his conditional release for more 18 months, until he was arrested by Immigration and Customs Enforcement ("ICE"). <u>Id</u>. The criminal charges remain pending. ECF No. 2 at 2.

At some point, local law enforcement informed ICE that they had previously encountered

Petitioner with multiple fabricated identity documents and suspected that he is involved in a human trafficking organization. Id. at 10. ICE arrested Petitioner on December 16, 2025, charged him administratively under 8 U.S.C. 1227(a)(1)(B) for having overstayed his student visa, and detained him at the California City Detention Facility ("CCDF"). Id. at 9-11.

At a bond hearing on February 3, 2026, an immigration judge ("IJ") denied bond after finding Petitioner to be a danger to the community based on the pending criminal charges and suspicion of human trafficking. ECF No. 9 at 20-21. On June 1, 2026, an IJ ordered Petitioner removed from the United States. Petitioner appealed the removal order to the Board of Immigration Appeals ("BIA"), where it remains pending. See EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation.

**A. Petitioner's Medical Concerns**

Prior to detention, Petitioner had been receiving treatment for a lumbar disc herniation, kidney stones, and persistent chest pain. ECF No. 1 at 6. He claims that his physical and mental health have declined during detention. His chest pain has become more frequent and the pain and numbness from his lumbar condition and kidney stones have worsened. Id. at 11. These worsening symptoms have interfered with his sleep and affected his mental health. ECF No. 10 at 3; 11 at 2. He continues to experience pain and suffers nearly constant cold viruses. ECF No. 22 at 3-4.

Petitioner claims receiving delayed and inadequate medical evaluation and treatment at CCDF, despite repeated requests. After reporting that he was coughing up blood and suspected that he had bronchitis or a heart problem, he waited seven days before being seen by medical staff. ECF No. 22 at 2; 25 at 1-2. After a second report for the same symptoms, he waited another 15 days for an appointment. Id. Between late May and mid-June 2026, Petitioner made several reports of numbness in his limbs, dizziness causing him inability to stand, chest pain, pain relating to his kidney stones and lumbar disc herniation, and depression, but was only given cold medicine and chest x-rays. ECF No. 22 at 2-3; 25 at 5, 7, 11. When the prescribed medication did not adequately address Petitioner's symptoms, facility staff told him that he had to submit additional medical requests and instructed him to sign a form indicating he had refused

medication. ECF No. 11 at 2-3. On June 11, 2026, after he reported a depressed mood and that friends told him he was talking to himself, he was prescribed sertraline, an antidepressant. ECF No. 22 at 3; 25 at 67. Approximately one month later he asked for an alternative medication because he felt the sertraline was ruining his brain and he was still anxious and unable to sleep, so a medical provider prescribed anti-anxiety medication hydroxyzine. ECF No. 22 at 3; 25 at 10, 13, 21-24, 63.

Before being detained, Petitioner was able to manage his mental health effectively, and though he complained of "mental health discomfort" at a June 26, 2026 meeting with his attorney, he was able to focus and communicate clearly at that time. ECF No. 19 at 2, 3. By mid-July, his attorney noticed a marked decrease in his ability to focus and communicate. Id. at 3. Petitioner repeated himself frequently and said he felt "slow" and unable to think as he normally would. Id. Counsel was unable to determine whether or not he was taking psychiatric medication. Id. Petitioner's friend also observed a decline in Petitioner's mental health since being detained, noting a decline in memory, slower reactions, and that Petitioner was talking to himself. Id.

**B. Procedural History Before This Court**

Petitioner filed an application for writ of habeas corpus (ECF No. 1) and motion for temporary restraining order (ECF No. 2) on March 23, 2026, raising several Fifth Amendment due process claims: that he is subject to prolonged civil detention without a meaningful individualized custody review; that detention is not necessary because supervised release conditions after his criminal arrest have proven effective when he was arrested and released on criminal charges; that he has been denied adequate medical evaluation and treatment while in immigration custody; and that custody has not been reconsidered by an IJ even though his deteriorating medical condition constitutes a changed circumstance. The district judge assigned to this matter denied Petitioner's motion for a temporary restraining order, finding that Petitioner had not demonstrated a likelihood of success on the merits of his habeas petition because he already received a bond hearing and he had not stated a prima facie case of prolonged detention pursuant to Zadvydas v. Davis, 533 U.S. 678, 701 (2001). ECF No. 5.

Respondents contend that habeas relief should be denied because Petitioner is lawfully

detained pursuant to 8 U.S.C. § 1226(a) and has already been provided a bond hearing before an IJ, and that inadequate medical treatment is not a basis for habeas relief. ECF No. 9. Petitioner replied that he does not seek to relitigate the bond hearing; rather, his argument is that ongoing detention is no longer reasonable based on his changed medical circumstances. ECF No. 10.

On May 20 and 27, 2026, Petitioner renewed his motions for preliminary injunction and temporary restraining order (ECF Nos. 11, 12) raising the same arguments presented in his § 2241 petition, along with updated information about his ongoing medical problems. The undersigned appointed counsel and ordered supplemental briefing. ECF No. 14, 15. Petitioner's amended petition claims that his detention has become prolonged and violates due process in the absence of a constitutionally adequate bond hearing, and that harsh conditions of confinement have become punitive and violate due process. ECF No. 19. Respondents countered that Petitioner has already received the process due under 8 U.S.C. § 1226(a), that detention has not become prolonged, and that the substantive due process analysis set forth in Doe v. Chestnut, 810 F. Supp. 3d. 1169 (E.D. Cal. Nov. 20, 2025) is not applicable in this matter. ECF No. 21. Petitioner replied with additional facts regarding his medical care in detention and argued that punitive conditions of confinement are relevant to a substantive due process analysis. ECF No. 22.

## II. Statutory Detention Framework

The parties agree that 8 U.S.C. § 1226(a) governs Petitioner's detention. Section 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." Rodriguez Diaz v. Garland, 53 F.4th 1189, 1196 (9th Cir. 2022). When a noncitizen is arrested and taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination, including the setting of bond. See 8 C.F.R. § 236.1(c)(8). After this initial custody determination, the noncitizen may request a bond redetermination by an IJ. 8 C.F.R. § 236.1(d)(1). For each subsequent bond redetermination, the noncitizen's request may be considered "only upon a showing that the [noncitizen]'s circumstances have changed materially since the prior bond redetermination." 8 C.F.R. § 1003.19(e). The IJ's bond decision is appealable to the Board of Immigration Appeals ("BIA") pursuant to 8 C.F.R. § 1003.19(f).

### III. Due Process Analysis

The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted).

In Rodriguez Diaz v Garland, 53 F.4th 1189 (9th Cir. 2022), the Ninth Circuit addressed the procedural due process rights of noncitizens detained under § 1226(a). The Court held that, in cases of prolonged § 1226(a) detention, procedural due process generally does not require a second bond hearing at which the government bears the burden of proof. It did not, however, foreclose all as-applied challenges to § 1226(a)'s procedures. Id. at 1213. Additionally, while the Ninth Circuit noted that § 1226(a) provides extensive *procedural* protections (id. at 1202), it did not address whether those protections foreclose a noncitizen's claim of a *substantive* due process violation.

As a matter of substantive due process, governmental action may only infringe a fundamental right if "the infringement is narrowly tailored to serve a compelling state interest." Reno v. Flores, 507 U.S. 292, 302 (1993). "At the least, due process requires that the nature and duration of commitment bear some reasonable relation to the purpose for which the individual is committed." Jackson v. Indiana, 406 U.S. 715, 738 (1972). In the context of pretrial detention, the Ninth Circuit has held that "[a] [substantive] due process violation occurs when detention becomes punitive rather than regulatory, meaning there is no regulatory purpose that can rationally be assigned to the detention, or the detention appears excessive in relation to its regulatory purpose." United States v. Torres, 995 F.3d 695, 708 (9th Cir. 2021) (citing United States v. Salerno, 481 U.S. 739, 747 (1987)). In the immigration context, "[d]ue process protects against immigration detention that is not reasonably related to the legitimate purpose of effectuating removal or protecting against danger and flight risk." Padilla v. U.S. Imm. and Customs Enforcement, 704 F. Supp. 3d 1163, 1171-72 (W.D. Wash. 2023) (citing Zadvydas v. Davis, 533 U.S. 678, 690-91 (2001)); see also Larios v. Wofford, No. 1:26-cv-1498 DJC CKD, 2026 WL 765019, at *5 (E.D. Cal. Mar. 18, 2026) (recognizing availability of substantive due process claims in the context of immigration detention).

The undersigned applies the following five-factor balancing test developed by Judge Pitts of the Northern District of California to evaluate whether a particular individual's ongoing immigration detention violates substantive due process: (1) the length of detention and whether it is excessive in relation to its regulatory purpose; (2) the government's contribution to any delay; (3) the evidence supporting the determination that detention is warranted to prevent flight risk or community danger; (4) whether the government interests in ensuring appearance at future proceedings and protecting the community could be protected through alternatives to detention that are less harsh; and (5) the conditions of detention and how they compare to conditions under which pretrial criminal detainees or people convicted of crimes are held. See Doe v. Becerra, 732 F. Supp. 3d 1071, 1080 (N.D. Cal. 2024) ("Doe v. Becerra II"). Applying these Doe v. Becerra II factors, the undersigned concludes that Petitioner's current detention violates substantive due process.

**A. Length of Detention**

"[A]t some point, [civil] detention can 'become excessively prolonged, and therefore punitive,' resulting in a due process violation." Torres, 995 F.3d at 708 (quoting Salerno, 481 U.S. at 747 n.4). "But while the existence of some threshold of per se due process violation may be 'undisputed,' . . . it has also never been clearly delineated in the context of immigration detention." Doe v. Becerra, 704 F. Supp. 3d 1006, 1020 (N.D. Cal. 2023) ("Doe v. Beccera I"). The Supreme Court deemed six months the presumptive limit of reasonable detention under § 1231(a)(6). Zadvydas v. Davis, 533 U.S. 678 (2001). In Demore v. Kim, 538 U.S. 510 (2003) the Supreme Court upheld the facial constitutionality of mandatory detention under § 1226(c), but with the understanding that § 1226(c) detention is relatively "brief" and "limited," and "lasts roughly a month and a half in the vast majority of cases" and "about five months in the minority of cases in which the [noncitizen] chooses to appeal." Id. at 513, 529 n.12, 530. Conversely, in Jennings v. Rodriguez, 538 U.S. 281 (2018), the Supreme Court found no implicit six-month limit on length of detention. These cases show that Petitioner's nine months of detention qualify as prolonged and may therefore warrant additional constitutional scrutiny, relative to a shorter period of detention.

To determine whether detention has violated substantive due process rights, courts in this and other districts have analogized immigrant detention to pre-trial criminal detention in formulating a test to weigh the length of detention against its regulatory purpose:

> Ultimately, though, whether this prolonged detention is *excessive* and therefore punitive is a relative question. The duration ofdetention itself must be weighed against . . . the regulatory purposes for detention—preventing flight risk and protecting public safety. Whether the duration of detention is excessive depends in part on the degree of those risks and the extent to which [the petitioner's] detention mitigates them.

Doe v. Becerra II, 732 F. Supp. 3d at 1083 (emphasis in original); see also Torres, 995 F.3d at 708 ("The point at which detention constitutes a due process violation requires a case-by-case analysis.").

Petitioner's detention has lasted over nine months, which is undoubtedly prolonged. See Chen v. Aitken, 917 F. Supp. 2d 1013, 1018 (N.D. Cal. 2013) (holding Petitioner's seven-month detention under § 1225(b) was "prolonged" because it "has lasted well beyond the typical period described in Demore" and "neither release nor removal are imminent"). The pending appeal to the BIA suggests that Petitioner "faces an undetermined, but likely significant, period of mandatory detention through the appeals process." Gao v. LaRose, 805 F. Supp. 3d 1106, 1111 (S.D. Cal. 2025). But while prolonged, the current nine-month duration of Petitioner's detention, standing alone, does not violate substantive due process. See Torres, 995 F.3d at 699 (identifying 21-months of pre-trial detention as "likely approaching the outer bounds of due process"). However, Petitioner has offered evidence that this duration is excessive in relation to its regulatory purpose, in that any danger or risk of flight he poses can be mitigated by alternatives to detention and the conditions of confinement are excessively harsh, making continued detention punitive.

**B. Responsibility for Delay**

Relevant to this analysis is the parties' responsibility for "delays that have contributed to the duration of detention." Doe v. Becerra II, 732 F. Supp. 3d at 1083; see also United States v. Gelfuso, 838 F.2d 358, 359 (9th Cir. 1988) (the due process limit on the length of pretrial

detention requires consideration of "the length of confinement in conjunction with the extent to which the prosecution bears responsibility for the delay that has ensued"). The record does not indicate that either party is particularly responsible for delays contributing to Petitioner's lengthy detention. The question of whether Petitioner should be deported is making its way through the appellate process which, though lengthy, does not appear to have been delayed by any specific action by either party.

**C. Evidence of Flight Risk and Danger**

Determining whether Petitioner's prolonged detention has become punitive requires consideration of the extent to which it serves its regulatory purposes of preventing flight and danger to the community. "This inquiry requires evaluating the degree to which [Petitioner] poses a flight risk or danger, which in turn requires the Court to consider the evidence related to those risks." Doe v. Becerra II, 732 F. Supp. 3d at 1086.

The record evidence does not indicate – and no IJ has found – that Petitioner poses a risk of flight. He has lived in the U.S. since 2019, maintained a fixed address and employment before being subject to detention, and complied with the terms of his release from criminal custody. ECF No. 1 at 6.

The nature of Petitioner's pending criminal charges suggest a potential danger to society. Petitioner has been charged with various crimes including exploiting prostitution and engaging in forgery and fraud, and he is being investigated for possible ties to a human trafficking ring. A finding of involvement in human trafficking could certainly indicate that Petitioner poses a danger to the community. However, the charges remain pending, and a state court judge found it appropriate to release Petitioner on bond. After that release, for more than 18 months, Petitioner lived apparently without incident. Under these facts, a determination by this Court of *present* dangerousness would be unwarranted.

**D. Alternatives to Detention**

Relevant to assessing dangerousness to society and risk of flight is whether the government's interests in protecting the community and ensuring appearances for immigration proceedings could be protected through alternatives to detention that are less restrictive. Doe v.

Becerra II, 732 F. Supp 3d at 1080.

To the extent Petitioner poses any risk of flight, there are routine and obvious conditions that ICE could impose, including check-ins with ICE officials and electronic monitoring. ICE's Intensive Supervision Appearance Program (ISAP) offers alternatives to detention such as GPS tracking, a smartphone app, and reporting by telephone. See Doe v. Chestnut, 810 F. Supp. 3d at 1198, citing ICE, Alternatives to Detention, perma.cc/384H-HCLY. These alternatives to detention are specifically designed to mitigate flight, and ICE's own data shows that the vast majority of participants comply with the programs' requirements. Id. The availability of these alternatives to detention greatly reduces any government interest in detention for the purported purpose of mitigating flight risk.

While the record does not contain evidence regarding the efficacy of GPS monitoring to mitigate dangerousness, the Court in Doe v. Becerra II highlighted "studies from the criminal context suggesting that electronic monitoring can reduce recidivism" and opined that "someone who knows their location is being monitored will face at least some additional incentive not to engage in criminal conduct." Doe v. Becerra II, 732 F. Supp 3d at 1088. Moreover, ISAP or other established ICE monitoring procedures are not the only alternatives to detention that exist. Other conditions that could mitigate danger may include but are not limited to home detention or release to a designated sponsor, prohibitions on use or possession of firearms, no-contact orders, and orders allowing re-detention if any terms of release are violated. Petitioner has demonstrated that he can comply with terms of conditional release; he complied with the terms of his release from criminal detention from April 2024 to December 2025, before ICE detained him.

**E. Conditions of Detention**

Substantive due process also imposes outer bounds on the conditions of civil immigration detention. Doe v. Becerra II, 732 F. Supp. 3d at 1080; Jones v. Blanas, 393 F.3d 918, 932 (9th Cir. 2004) ("[W]hen a [civil] detainee is confined in conditions identical to, similar to, or more restrictive than, those in which his criminal counterparts are held, we presume that the detainee is being subjected to 'punishment.'"). Petitioner's allegations of restrictive conditions at the California City detention facility (hereinafter "CCDF") comport with other courts' findings that

conditions at CCDF are "not only inherently harsh but also worse than the conditions […] in state prison. Doe v. Chestnut, 810 F. Supp. 3d at 1201 (citing Doe v. Beccera II, 732 F. Supp. 3d at 1089).

Petitioner has been subject to delayed evaluation and care for urgent health concerns and has received inadequate treatment for chronic pain and preexisting conditions. This lack of care, which has apparently led to the deterioration of Petitioner's physical and mental health, is not unusual at CCDF. In a class action against ICE alleging that conditions of confinement at CCDF violated noncitizen detainees' First and Fifth Amendment rights, Judge Chesney of the Northern District of California found that the facility "struggle[s] to deliver standard of care for common uncomplicated problems," let alone for "patients with complex medical care needs" and that "it is not safe to be sick" at CCDF. Gomez Ruiz v. U.S. Immigration and Customs Enforcement, 3:25-cv-09757-MMC, 2026 WL 851980, at *3 (N.D. Cal. March 27, 2026). Consistent with Petitioner's claim that CCDF delays requests for medical care, the intake process at CCDF was found to be "incomplete" and "haphazard." Id. Patients "are not seen within a reasonable time" and sick calls "describing urgent medical symptoms can go unaddressed or unacknowledged for days or weeks." Id. An expert investigation "revealed multiple instances of 'poor clinical judgment,' inadequate recordkeeping, and treatment that failed to comport with the prevailing standard of care." Id. See also Tigranyan v. Warden of California City Det., No. 1:25-CV-01554-DJC-SCR, 2026 WL 91765, at *6 (E.D. Cal. Jan. 13, 2026) (noting investigation and report by Disability Rights California finding that CCDF fails to provide necessary medical and mental health care and fails to other meet basic needs), report and recommendation adopted, No. 1:25-CV-01554-DJC-SCR, 2026 WL 130843 (E.D. Cal. Jan. 16, 2026).

Though not articulated by Petitioner, additional factors indicate restrictive conditions at CCDF. Detainees at CCDF are given at most one hour per day of outdoor recreation time, which is "less than prisoners in segregation are offered." Gomez Ruiz, 2026 WL 851980, at *5. Daily counts and insufficient staffing at CCDF make it impracticable for attorneys to visit detainees as often as they typically would, and the no-contact nature of the visits "constitute[e] restrictive conditions under which attorneys have difficulty hearing and speaking to their clients." Gomez

Ruiz, 2026 WL 851980, at *5. Additionally, conditions at CCDF have been described as "abysmal," with "frigid" temperatures and water that "tast[ed] like bleach or detergent." Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1172 (E.D. Cal. 2025). While prisons routinely provide sweatshirts and sweatpants to inmates free of charge, CCDF does not do so for their immigrant detainees. Gomez Ruiz, 2026 WL 851980, at *8.

The undersigned agrees that conditions at CCDF "are both excessive in relation to any non-punitive purpose and employed to achieve objectives that could be achieved by other, less harsh methods." Gomez Ruiz, 2026 WL 851980, at *8.

### F. Conclusion as to Substantive Due Process Analysis

On balance, the undersigned finds that Petitioner has established that his detention is excessive in relation to its regulatory purpose. Petitioner has spent nine months – with no fixed endpoint, given the ongoing appeal – confined in conditions more restrictive than criminal confinement, despite the availability of post-release monitoring that could mitigate any danger Petitioner presents. Accordingly, the undersigned finds that Petitioner's detention has become punitive and recommends that the amended petition be granted.

## IV. Remedy

The undersigned next turns to the appropriate remedy:

> Federal habeas corpus practice, as reflected by the decisions of [the Supreme] Court, indicates that a court has broad discretion in conditioning a judgment granting habeas relief. Federal courts are authorized, under 28 U.S.C. § 2243, to dispose of habeas corpus matters 'as law and justice require.'" Hilton v. Braunskill, 481 U.S. 770, 775 [] (1987). "[H]abeas corpus is, at its core, an equitable remedy." Schlup v. Delo, 513 U.S. 298, 319[] (1995). "Moreover, in constitutional adjudication as elsewhere, equitable remedies are a special blend of what is necessary, what is fair, and what is workable." Lemon v. Kurtzman, 411 U.S. 192, 200 [] (1973) (footnote omitted).

Doe v. Chestnut, 810 F. Supp. 3d at 1202. The appropriate remedy for this violation of substantive due process is release, but with safeguards to mitigate potential danger to the community. See id. (ordering release with "appropriate conditions so that the government's significant interests in ensuring Petitioner's appearance at future proceedings, protecting the community, and that, if ordered removed, Petitioner will be successfully removed, are protected."); Zadvydas, 533 U.S. at 700 ("[T]he [noncitizen]'s release may and should be

conditioned on any of the various forms of supervised release that are appropriate in the circumstances, and the [noncitizen] may no doubt be returned to custody upon a violation of those conditions.”).

Accordingly, **IT IS ORDERED** that:

1. Petitioner’s motion for appointment of counsel (ECF No. 3) be DENIED as moot given that the Court already appointed counsel (ECF No. 14).
2. Petitioner’s motion to proceed in forma pauperis (ECF No. 16) be GRANTED.

Moreover, **IT IS RECOMMENDED** that:

1. Petitioner’s petition for writ of habeas corpus be GRANTED as follows:
    a. Respondents shall IMMEDIATELY RELEASE Petitioner Dongshun Zhang (A# 221-468-470) from custody. At the time of release, Respondents must return all of Petitioner’s documents and possessions.
    b. Upon Petitioner’s release, Respondents shall enroll Petitioner in ICE’s Intensive Supervision Appearance Program (ISAP) and impose GPS location monitoring and periodic home check-ins. Respondents may impose additional conditions of release for the purposes of ensuring public safety so long as those terms, and consequences of violating those terms, are communicated to Petitioner and his counsel in writing in advance of imposition.
    c. Respondents may re-detain Petitioner if (1) Petitioner violates the conditions of release and Respondents provide Petitioner notice and an opportunity to be heard as to the alleged violation or (2) Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.
2. Respondents’ motion to dismiss (ECF No. 9) be DENIED.
3. Petitioner’s motion for preliminary injunction (ECF No. 11) and renewed motion for temporary restraining order (ECF No. 12) be DENIED as MOOT.
4. The Clerk be directed to:
    a. Serve the California City Immigration Processing Center with a copy of this Order; and

b. Enter judgment in Petitioner's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 21, 2026

SEAN C. RIORDAN
UNITED STATES MAGISTRATE JUDGE